UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ALLEN BRASHER, | ) | No. CV 09-04853-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1.    Whether the Administrative Law Judge ("ALJ") properly

1    rejected the opinions of the treating physicians;

2    2.    Whether the ALJ erred in determining Plaintiff's

3          credibility;

4    3.    Whether the ALJ properly considered the combined effects of

5          Plaintiff's impairments when determining his residual

6          functional capacity.

7

8    This Memorandum Opinion will constitute the Court's findings of

9    fact and conclusions of law.   After reviewing the matter, the Court

10   concludes that for the reasons set forth, the decision of the

11   Commissioner must be reversed.

12

13                                    I

14   **THE ALJ PROPERLY EVALUATED THE OPINIONS OF TREATING,**

15   **EXAMINING, AND NON-TREATING PHYSICIANS**

16   In his first issue, Plaintiff asserts, generally, that the ALJ

17   failed to properly reject the opinions of his treating physicians.

18

19   A.   **History of Relevant Medical Treatment**.

20   On February 27, 2003, Plaintiff was evaluated in the emergency

21   room at Los Robles Regional Medical Center by Dr. Tchejeyan following

22   an on-the-job injury.   In a report dated April 23, 2004, Dr. Tchejeyan

23   reviewed his own treatment of Plaintiff, along with other treatment

24   records by various physicians and providers. (AR 261-72.)

25   Dr. Tchejeyan assessed work restrictions of the following nature:

26   no sitting/standing/walking greater than 30 minutes; no bending at the

27   waist; no lifting greater than 10 pounds; no pushing/pulling greater

28   than 15 pounds. (AR 270-71.)   This is consistent with the requirements

1  of sedentary work, which involve lifting of no more than 10 pounds,
2  and occasional lifting or carrying articles like docket files, ledgers
3  and small tools. (See 20 C.F.R. §404.1567(a); SSR 83-10.)   Dr.
4  Tchejeyan noted that on April 5, 2003, Plaintiff underwent a lumbar
5  spine epidural injection by Dr. Lipel, which, according to Plaintiff,
6  did not provide significant relief of his symptoms, but in fact
7  actually increased them. (AR 362.)   Dr. Tchejeyan recommended
8  referrals to a spine specialist as well as to a diabetes specialist.
9  The spine specialist, Dr. deGrange, evaluated Plaintiff on May 6, 2003
10 and recommended EMG/nerve conduction studies.  As Dr. Tchejeyan later
11 noted, however, this specialist did not anticipate any need for
12 surgery based on the current MRI findings. (AR 262.)

13    Dr. Tchejeyan's restrictive functional limitations were largely
14 contradicted by other examining and treating physicians.  Dr. Siciarz
15 performed a consultative internal medicine evaluation on September 18,
16 2007, and Dr. Siciarz limited Plaintiff to pushing, pulling, lifting
17 and carrying 50 pounds occasionally and 25 pounds frequently; standing
18 and walking limited to six hours of an eight-hour day with normal
19 breaks, with unrestricted sitting; and no restrictions in terms of
20 hearing, seeing, speaking, or using both hands for performing fine and
21 gross manipulation. (AR 16, 194-98, at 197.)  This constitutes greater
22 functional ability than was assessed by Dr. Tchejeyan.   These
23 conclusions were adopted by the State Agency physician, Dr. London (AR
24 216, 219), who found Plaintiff capable of medium exertional activity.
25 Finally, when Plaintiff's voluminous medical records were examined by
26 Dr. Silbart at the request of his workers' compensation counsel on
27 November 10, 2006, he noted that Plaintiff had been treated by Dr.
28 Litoff in 2005 and that, despite complaining of constant pain in his

1   low back, and receiving from Dr. Litoff a diagnosis of lumbosacral
2   sprain/strain, resolving, and degenerative disc disease of the
3   lumbosacral spine, the only work restrictions assessed by Dr. Silbert
4   were that Plaintiff should avoid heavy lifting and should do no
5   repetitive bending and stooping activities. (AR 145-154, at 154.)
6   Again, this constitutes greater functional ability than what was
7   assessed by Dr. Tchejeyan. (See SSR 83-10p; 20 C.F.R. §404.1567.)

9   **B.   ALJ's Decision**.

10   The ALJ referenced Dr. Tchejeyan's findings, as a treating
11   physician, and depreciated his reliance on them as against the State
12   Agency physician, consultative examiner ("CE"), and another treating
13   physician (see, infra) based on the following discussion in the
14   decision:

15   "The extreme limitations [assessed by Dr. Tchejeyan]
16   are rejected inasmuch as there is a lack of medical
17   pathology in the record that would justify the restrictions
18   indicated.  The subjective complaints of the [Plaintiff]
19   appear to be the basis for the extreme limitations indicated
20   ...  The [Plaintiff's] relevant medical records show that
21   treating physicians responded with limited and conservative
22   treatment.  Such treatment is inconsistent with the medical
23   response that would be expected if the limitations were as
24   severe as described by [Dr. Tchejeyan]."
25   (AR 16.)

27   **C.   Analysis**.

28   The issue is whether the stated reasons set forth by the ALJ for

4

his depreciation of Dr. Tchejeyan's functional assessment are supported by specific and legitimate reasons. The ALJ found that the objective medical evidence fails to fully support these restrictions. (AR 15.) As the Court has already noted, the ALJ more fully credited the findings of the CE, Dr. Siciarz (who, as Plaintiff correctly notes, only examined medical evidence), the State Agency physician, and Dr. Silbert. While Plaintiff devotes substantial discussion to the reports of Drs. Hersel and Lipel, their reports only indicate examinations and medication refills (in the case of Dr. Hersel), and as to Dr. Lipel, only set forth the fact that he performed two epidural procedures. Neither of these physicians identified any specific functional limitations in their reports.

The basic legal proposition concerning evaluation of various levels of medical providers (treating, examining and non-treating), has often been set forth by the Ninth Circuit, and is generally stated as a requirement that the ALJ must set forth specific, legitimate reasons for rejecting the opinion of a treating physician in favor of that of an examining physician. See Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002); Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). It is certainly the case that the opinion of a treating physician is not entitled to unrestricted deference. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

In this case, the ALJ did provide specific and legitimate reasons in his decision for rejecting Dr. Tchejeyan's conclusions. As already noted, the ALJ compared these conclusions to other opinions of examining and non-examining physicians, and found that Dr. Tchejeyan's restrictions were singularly conservative in comparison with that of the other doctors. Further, the ALJ noted that Dr. Tchejeyan placed

5

excessive reliance on Plaintiff's subjective statements, and that his treatment records only reflected very limited and conservative treatment for extreme complaints of recurring pain. (AR 16, 270, 271.) Indeed, this Administrative Record demonstrates a plethora of medical information upon which the ALJ could and did rely.   The ALJ's conclusion that the objective medical evidence did not support Dr. Tchejeyan's restrictive functional limitations is substantiated by various of these records, including an EMG performed by Dr. Yang which showed mild bilateral neuropathy with no evidence of lumbosacral radiculopathy (AR 263, 281); Dr. Chiu's neurological examination revealing straight leg raising at 75 degrees on the right and 65 degrees of the left, cranial nerves within normal limits, muscle strength grossly intact, gait normal, tandem normal, and alternative movement rates and coordination good. (AR 129, 130.)   Dr. Siciarz found that Plaintiff's movements were "normal" and that he did not require use of an assistive device for walking. (AR 195.)   He also found that Plaintiff could sit comfortably and stand and sit without difficulty. (AR 196.)   Dr. Siciarz' examination of Plaintiff's back noted generally unremarkable results. (AR 196.)   He had a reasonably good range of motion and straight leg raising was 45 degrees, bilaterally. (Id.)   He had normal gait and station. (AR 197.)

In sum, the Court cannot find that the ALJ's conclusions based on his evaluation of treating, non-treating and examining physicians is not supported by substantial evidence in the record, and that specific and legitimate reasons were provided in the decision for the ALJ's rejection of Dr. Tchejeyan's opinion.

//

//

**II**

**THE ALJ'S CREDIBILITY ASSESSMENT AS TO PLAINTIFF**

**DOES NOT WITHSTAND SCRUTINY**

In Plaintiff's second issue, he asserts that the ALJ erred in determining his credibility.

The portion of the ALJ's decision which addresses credibility findings is quoted in the JS (Id. at 24), and is found at AR 15.  In summary, while the ALJ found that the evidence as to Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he concluded that Plaintiff's statements concerning intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the determined residual functional capacity ("RFC"). (Id.)  Three discrete reasons are set forth in the decision in support of his credibility assessment, summarized as follows:

1.  That no determination of Plaintiff's RFC limitation was made by any qualified treating physician that would limit Plaintiff to the degree asserted by him;

2.  Plaintiff testified he is unable to sit for more than 20 to 30 minutes but drove 75 miles to the hearing;

3.  Plaintiff is not currently taking pain medication, even over the counter.

(Id.)

At the hearing, Plaintiff testified extensively as to his pain. He stated that he has pain going down his right leg and sometimes also down his left leg and in his low back. (AR 25.)  He can stand for about ten minutes at a time and can sit for "probably 20, maybe 30

7

minutes before I have to move." (AR 28.)  He does not cook, and can only lift five to ten pounds. (AR 28-29.)  The pain affects his concentration. (AR 36.)

In a disability report (undated, but prepared after June 20, 2007), Plaintiff reported that he can't walk far, can't stand for long, can't sit or bend or reach, and cannot lift very much. (AR 111.) In another document entitled "Disability Report - Field Office" (AR 117-20), the employee preparing the report noted as to Plaintiff that, "His breathing seemed labored.  He stood up several times during the interview due to pain.  He seemed to be in a lot of pain during the interview.  He walked very slowly." (AR 119.)  This report was prepared on June 18,2007.

In order to evaluate the ALJ's credibility assessment, the legal standards utilized will be briefly summarized.

Subjective complaints of pain or other symptomology in excess of what an impairment would normally be expected to produce are subject to the credibility assessment of an ALJ.  Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).  An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  When determining credibility, the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity."  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also, Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).  In order to find that a claimant's subjective complaints are not credible, an ALJ "must specifically make findings that support this conclusion," Bunnell, 947 F.2d at 345, and provide "clear and

convincing reasons." <u>Rollins</u>, 261 F.3d at 857; <u>see</u> <u>also</u> <u>Varney v.</u>
<u>Secretary of Health & Human Services</u>, 846 F.2d 581, 584 (9th Cir. 1988)
(requiring the ALJ to put forward "specific reasons" for discrediting
a claimant's subjective complaints).

The absence of objective evidence to corroborate a claimant's
subjective complaints, however, does not by itself constitute a valid
reason for rejecting her testimony. <u>Tonapetyan v. Halter</u>, 242 F.3d at
1147.   However, weak objective support can undermine a claimant's
subjective testimony of excess symptomology.   <u>See</u> <u>e.g.</u>, <u>Tidwell v.</u>
<u>Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998).

Implementing regulations prescribe factors which should be
considered in determining credibility as to self-reported pain and
other symptoms.   In 20 C.F.R. §404.1529(c)(3), the factors to be
considered are specified to include a claimant's daily activities
("ADL"); the location, duration, frequency and intensity of pain or
other symptoms; precipitating and aggravating factors; the type,
dosage, effectiveness and side effects of any medication; treatment
received; and measures taken to relieve pain.

The regulations also specify that consideration should be given
to inconsistencies or contradictions between a claimant's statements
and the objective evidence:

> "We will consider your statements about the intensity,
> persistence, and limiting effects of your symptoms, and we
> will evaluate your statements in relation to the objective
> medical evidence and other evidence, in reaching a
> conclusion as to whether you are disabled.  We will consider
> whether there are any inconsistencies in the evidence and
> the extent to which there are any conflicts between your

1    statements and the rest of the evidence, including your

2    history, the signs and laboratory findings, and statements

3    by your treating or nontreating source or other persons

4    about how your symptoms affect you."

5  (20 C.F.R. §404.1529(c)(4).)

6

7    **A.**   **Analysis**.

8    The three reasons given by the ALJ to discredit Plaintiff's

9  credibility will be individually examined.

10    1.   That no determination of a residual functional capacity

11         limitation was made by any qualified treating physician that

12         would limit Plaintiff to the degree asserted by him. (AR

13         15.)

14    Dr. Tchejeyan opined that Plaintiff could perform only sedentary

15  work, that he could not sit, stand, or walk for longer than 30

16  minutes, that he could not bend at the waist, that he could not lift

17  anything heavier than ten pounds, and that he could not push or pull

18  anything heavier than 15 pounds. (AR 270, 271.)

19    Certainly, Dr. Tchejeyan is a qualified treating physician.

20  Although the Court has already determined that the ALJ rejected Dr.

21  Tchejeyan's functional assessments based on substantial evidence, the

22  fact is that Plaintiff's pain complaints were not significantly in

23  contradiction with Dr. Tchejeyan's assessment.  Perhaps a clearer

24  explication of the ALJ's reasoning is that Plaintiff's pain complaints

25  exceeded in severity the assessment of his physical condition rendered

26  by the physicians found to be most valid by the ALJ.  Even under that

27  rubric, however, and as noted in the Court's recitation of applicable

28  legal authority, this contradiction, in and of itself, would not

10

1  support an adverse credibility finding.   Therefore, the Court must
2  turn to the other reasons cited by the ALJ.

3

4      2.   Plaintiff testified that he was unable to sit for more than
5            20 - 30 minutes yet drove 75 miles to the hearing in one
6            hour and 15 minutes.

7      At the hearing, the ALJ elicited from Plaintiff that he drove to
8  the hearing, which took an hour and 15 minutes. (AR 23.)   Although
9  Plaintiff testified that he lives in his sister's house in Simi
10 Valley, there is nothing apparent in the record to indicate that this
11 was his point of origin for the drive to the hearing. (AR 23.)   Thus,
12 the ALJ's indication that Plaintiff drove 75 miles to the hearing
13 appears to be something outside the record.   But, even if Plaintiff
14 did drive 75 miles in one hour and 15 minutes, there were no questions
15 posed to him about it during the hearing, or any indication in the
16 record whether or not he took a break during that drive.   And even if
17 he did not, the possibility that he drove for an hour and 15 minutes
18 to attend a very important hearing may simply be a reflection that he
19 drove while in pain.   As Plaintiff convincingly argues to the Court,
20 whether or not he was, on a single occasion, able to drive for over an
21 hour is not something that is transferrable to the requirements of a
22 job which must be performed eight hours per day, five days a week.
23 (See JS at 28, and cases cited.)

24

25     3.   The third and last reason cited by the ALJ was that
26 Plaintiff was not presently taking pain medication, even over the
27 counter medication.   This conclusion, however, is contradicted by
28 Plaintiff's testimony at the hearing that he was treating at the free

clinic, which is not able to prescribe certain pain medications that he needed. (AR 29-31.)  Moreover, Plaintiff testified that the free clinic gave him Vicodin, which "doesn't work." (AR 34.)  It would seem evident that if powerful prescription pain medications did nothing for Plaintiff's pain, then over-the-counter medications would not do any better.  Further, Plaintiff provided testimony, not contradicted at the hearing, that he was not able to afford prescription medications. This is an adequate explanation for failure to avail himself of such treatment. (See Warre v. Commissioner, 439 F.3d 1001, 1006 (9th Cir. 2006); SSR 82-59.)

Based on the foregoing analysis, the Court concludes that the ALJ's credibility assessment does not withstand scrutiny, and the matter must be remanded for further hearing.  At that hearing, a de novo assessment of Plaintiff's credibility will be made.

The Court will only briefly address Plaintiff's third issue, which asserts that the ALJ did not properly consider the combined effect of his impairments when determining his RFC.  In particular, Plaintiff focuses on his obesity and his pain complaints.  The latter have already been addressed by the Court.  As to Plaintiff's obesity, all the treating and examining physicians clearly assessed Plaintiff in conjunction with their recognition of his obesity.  It is Plaintiff's burden to demonstrate that his obesity is a cause of certain functional impairments or deficits.  See Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

There is an observation by Dr. Tchejeyan that Plaintiff should undergo a weight loss program which "would potentially unload the lumbar spine, and therefore, minimize the existing symptoms from the underlying pathology." (AR 245.)  Even though the ALJ rejected Dr.

Tchejeyan's functional limitations, the recommendation that Plaintiff lose weight, and that there might be a connection between Plaintiff's pain and his obesity should be looked at more closely on remand.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED**.


DATED: November 16, 2010                              /s/
                                        VICTOR B. KENTON
                                        UNITED STATES MAGISTRATE JUDGE